UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CAROL COZEOLINO,                                  :
                                                  :
                            Plaintiff,            :
                                                  :           **OPINION AND ORDER**
            -against-                             :           11-CV-4530 (DLI)
                                                  :
CAROLYN W. COLVIN,[1]                             :
Commissioner of Social Security,                  :
                                                  :
                            Defendant.            :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

On February 28, 2008, Plaintiff Carol Cozeolino ("Plaintiff") filed an application for

Social Security disability insurance benefits ("DIB") and, on March 31, 2008, filed an

application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").

(*See* Certified Administrative Record ("R."), Dkt. Entry No. 17, 130-35.)  On July 1, 2008, these

applications were denied and Plaintiff filed a written request for a hearing.  (R. 51-52, 56-73.)

On November 24, 2009, Plaintiff appeared with counsel and testified at a hearing before

Administrative Law Judge Michael Cofresi (the "ALJ").  (R. 33-42.)  By a decision dated

December 17, 2009, the ALJ concluded Plaintiff was not disabled within the meaning of the Act.

(R. 9-32.)  On July 22, 2011, the ALJ's decision became the Commissioner's final decision when

the Appeals Council denied Plaintiff's request for review.  (R. 1-6.)

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits, pursuant

to 42 U.S.C. § 405(g).  (*See* Complaint ("Compl."), Dkt. Entry No. 1.)  The Commissioner

moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure, seeking affirmation of the denial of benefits.  (*See* Mem. of Law in Supp. of Def.'s

---

[1]       Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Carolyn W. Colvin shall be
substituted for Commissioner Michael J. Astrue as the defendant in this action.

Mot. for J. on the Pleadings ("Def. Mem.") at 1, Dkt. Entry No. 13.)  Plaintiff cross-moved for judgment on the pleadings, seeking reversal of the Commissioner's decision, or alternatively, remand.  (*See* Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") at 1, Dkt. Entry No. 15.)  For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted and Plaintiff's motion for judgment on the pleadings is denied.

## BACKGROUND

### A.  Non-Medical and Self-Reported Evidence

Plaintiff was born in 1954.[2]  (R. 51.)  She graduated from high school and worked as a bookkeeper for fifteen to twenty years, which involved processing accounts receivable, accounts payable, manual ledger work, and payroll work on a computer.  (R. 36, 41.)  On April 1, 2005, her employer ceased operating, and she has not worked since, though she was able to work and looked for work.  (R. 36-37.)  In September 2007, she was hit on the back of her neck by a clothing rack while shopping.  (R. 37.)  She stated that this injury, and related neck and back pain, became disabling as of February 28, 2008.  (*Id.*)  She experienced a stabbing, constant pain from the middle of her back down through her lower back.  (R. 37-38.)  She took over-the-counter Tylenol for her pain, in addition to prescribed medication for her high blood pressure and depression.  (R. 38.)  Her date last insured is September 30, 2008.  (R. 138.)

She testified that she was "a little depressed after [she] was laid off" in 2005, but that her depression worsened when her daughter was almost raped in 2006.  (R. 38-39.)  That incident had a debilitating effect on her, and she stayed in bed twenty-four hours a day, seven days a week.  (R. 38.)  She began taking medication for her depression, which improved her condition,

---

[2]     Plaintiff was 54 years old on her Alleged Onset Date, February 28, 2008, and her Date Last Insured, September 30, 2008.  As such, Plaintiff was "closely approaching advanced age."  20 C.F.R. § 416.963(d); *see also* 20 C.F.R. § 404.1568(d).

although she was "not a hundred percent." (R. 38-39.) Occasionally, she felt like she needed to cry, and generally did not "feel like doing anything." (R. 39.)

On April 13, 2008, Plaintiff submitted a Function Questionnaire. (R. 144-56.) Plaintiff reported that she experienced pain "24/7." (R. 155.) She lived with her children, and prepared food for them, cleaned, did laundry, and gardened. (R. 148-49.) She also took care of four cats with her children's help. (R. 147.) She was able to handle her personal care, needs, and grooming without assistance. (R. 147-48.) She went outside every day, and took public transportation on her own. (R. 149.) She shopped for groceries on her own, and was able to manage her finances without assistance. (R. 150.) She socialized two or three times per week and was able to get along with bosses, teachers, police, landlords, or other people in authority. (R. 151-52.)

Plaintiff also reported that she was only able to walk for three to five minutes before needing to stop and rest for a few minutes. (R. 152.) She did not use any walking aid. (*Id*.) Her impairments made it difficult to stand or to sit for long periods of time. (*Id*.) She was not taking any medication for her pain. (R. 155.)

On April 19, 2008, she submitted a second Function Questionnaire. (R. 158-68.) She reported that she "always" made meals for her family, which required thirty to ninety minutes of cooking. (R. 160.) She cleaned, dusted, and vacuumed her home without assistance. (R. 161.) She went outside "almost every day." (*Id*.) She shopped for groceries weekly, which took approximately one to two hours each time. (R. 162.) She reported that she could walk no further than three blocks before needing to rest for a few minutes. (R. 164.) She reported no problems with her memory. (R. 165.)

**B.	Medical Evidence**

**1.	Medical Evidence prior to Alleged Onset Date (February 28, 2008)**

Prior to the alleged onset date, Plaintiff was treated periodically for various conditions. On February 6, 2006, an electromyography ("EMG") showed evidence of mild ulnar neuropathy across the left elbow.  (R. 298-99.)  On June 8, 2006, Plaintiff was evaluated at the Queens-Long Island Medical Group ("QLIMG") and was diagnosed with ulnar neuropathy, gastroesophageal reflux disease ("GERD"), history of hypertension, deep vein thrombosis ("DVT"), and depression.  (R. 296.)  On August 7, 2006, Plaintiff visited her primary care physician at QLIMG, Peter Perdik, M.D., for low back strain resulting from a slip and fall at a grocery store. (R. 317.)  The x-rays of her lower back and right knee revealed no fractures or significant abnormalities.  (R. 355.)  Plaintiff continued to treat for these injuries.  (R. 313-14, 316.)

On September 15, 2006, Plaintiff underwent an MRI of her right knee, which revealed several meniscal tears, bruising, the presence of synovial fluid, and a posteromedial popliteal cyst.  (R. 320, 325.)  On March 22, 2007, Paul Enker, M.D., an orthopedic surgeon with the QLIMG performed arthroscopic surgery to repair Plaintiff's torn right knee medial meniscus. (R. 301, 311-12.)  Dr. Enker examined Plaintiff several times after her surgery and reported that, by May 30, 2007, Plaintiff had complete resolution of the preoperative right knee symptoms, no significant knee effusion, satisfactory range of motion, and that she walked without any aids, and denied any pain, swelling, locking, or giving out of her right knee.  (R. 315, 318, 321.)

On June 14, 2007, Plaintiff visited Dr. Perdik for neck and left shoulder pain related to a slip and fall accident at the grocery store.  (R. 310.)  On June 22, 2007, x-rays were negative for fracture and dislocation.  (R. 352.)  On October 16, 2007, x-rays demonstrated straightening of the cervical lordosis, anterior osteophytes involving the bodies of C5 and C6, and narrowing and

bilateral intervertebral foraminal encroachment at C5-C6 and C6-C7. (R. 322.) On November 12, 2007, an MRI showed a posterior disc bulge at the C3-C4 level, impinging on the thecal sac. (R. 360-61.) The MRI also revealed posterior disc herniation at the C4-C5 level, mild stenosis, ventral and dorsal marginal ostephytes, and diffused disc bulging at the C5-C6 and C6-C7 levels. (R. 360.) On December 6, 2007, Roy Guinto, M.D., examined Plaintiff for left leg pain and cramping. (R. 206.) He noted that Plaintiff was mildly obese, and diagnosed her with venous insufficiency, varicose veins, edema, and pain. (*Id.*) He recommended elastic leg support while walking and leg elevation two to three times daily. (*Id.*) On December 19, 2007, Mark B. Eisenberg, M.D., a neurosurgeon, examined Plaintiff for complaints of pain in her right neck and shoulder blade region. (R. 204-05.) He reviewed her MRI and recommended physical therapy. (R. 205.)

On February 8, 2008, Plaintiff visited Dr. Perdik, complaining of numbness in her right arm. (R. 323-24.) Dr. Perdik recommended an EMG and noted that she experienced tingling and numbness. (R. 324.) He noted that her neck pain was improving. (*Id.*)

### 2. Medical Evidence after the Alleged Onset Date (February 28, 2008)

Plaintiff continued to treat with various doctors for her injuries. On March 10, 2008, S. Reejsinghani, M.D., a neurologist, examined Plaintiff and found no abnormalities. (R. 363-65.) However, he did note that Plaintiff stated that physical therapy did not improve her symptoms. (R. 365.) On April 9, 2008, Dr. Reejsinghani administered diagnostic testing, including an EMG of the right upper extremity, all of which was negative. (R. 209-10.)

On April 21, 2008, Plaintiff saw Dr. Perdik for a routine check-up. (R. 391-92.) Dr. Perdik noted that Plaintiff's hypertension and depression were well controlled, that her muscle tone and strength were normal, and that her gait was coordinated and smooth. (*Id.*) He

diagnosed her with cervical disc degeneration and recommended that she see a neurologist for the numbness in her right arm.  (R. 392.)

On April 22, 2008, Dr. Perdik completed a Multiple Impairment Questionnaire.  (R. 174-83.)  He opined that in an eight-hour work day, Plaintiff could sit two hours, stand/walk less than one hour, and that she could not sit or stand/walk continuously in a work setting.  (R. 176-77.)  Dr. Perdik opined that approximately every sixty to ninety minutes, Plaintiff would need to move for fifteen minutes before sitting again.  (*Id*.)  She could frequently lift five to ten pounds, occasionally lift ten to twenty pounds, and never lift over twenty pounds.  (R. 177.)  She could frequently carry five to ten pounds, but could never carry over ten pounds.  (R. 177-78.)  She had no significant limitations in doing repetitive reaching, handling, fingering or lifting.  (*Id*.)  He did not note any other limitations.  He opined that emotional factors did not contribute to the severity of the symptoms and that Plaintiff could tolerate moderate stress.  (R. 179.)

On May 28, 2008, Arlene Broska, Ph.D., a psychologist, evaluated Plaintiff.  (R. 241-44.)  Plaintiff complained about difficulty getting out of bed in the morning, daily dysphoria, and general depression.  (R. 242.)  She reported that medication helped her conditions.  (*Id*.)  She denied suicidal or homicidal ideations or intent, and did not have symptoms of panic, mania, or thought disorder.  (*Id*.)  Dr. Broska opined that, vocationally, Plaintiff had the ability to follow and understand simple directions and instructions, to perform simple tasks independently, to maintain concentration and attention, and to learn new tasks.  (R. 243.)  Dr. Broska opined that Plaintiff had the ability to maintain a regular schedule, perform complex tasks independently, make appropriate decisions, and relate adequately to others.  (*Id*.)  However, she might not always appropriately handle stress.  (*Id*.)  Dr. Broska diagnosed Plaintiff with depressive disorder, not otherwise specified.  (R. 244.)

On June 3, 2008, G. Minola, M.D., a State agency review psychiatrist, reviewed Plaintiff's medical records and completed a psychiatric review technique form. (R. 221-38.) Dr. Minola found that Plaintiff's affective disorder did not satisfy the criteria of Section 12.04 of the Listing of Impairments. (R. 221, 224.) In support of this finding, Dr. Minola noted that Plaintiff exhibited mild limitations in activities of daily life and social functioning, and moderate difficulties maintaining concentration. (R. 231.) There was no evidence of repeated episodes of mental deterioration of extended duration. (*Id.*) Her understanding and memory were moderately limited with respect to complex instructions, but not significantly limited with respect to understanding short and simple instruction. (R. 235.) Plaintiff's concentration was not significantly limited in carrying out short and simple instructions, but was moderately limited in carrying out detailed instructions, maintaining attention for extended period, performing activities within a schedule, sustaining an ordinary routine without special supervision, working in coordination with others without being distracted by them, in making simple work-related decisions, and in completing a normal workday and workweek without interruptions from psychologically-based symptoms. (R. 235-36.) Finally, her social interaction and adaptation skills were not significantly limited. (R. 236.)

On June 18, 2008, Luke Han, M.D. conducted a consultative internal medical examination of Plaintiff. (R. 245-49.) Plaintiff complained of constant neck and lower back pain. (R. 245.) Plaintiff showed no signs of acute distress. (*Id.*) Plaintiff reported that she was able to cook seven days a week, clean twice a week, do laundry twice a week, shower herself twice a week, dress herself daily, and shop once a week. (R. 246.) She exhibited a normal stance and gate, and walked in heels without difficulty without assistance. (*Id.*) Plaintiff was able to get on and off of the examining table with no difficulty. (*Id.*) Her spine had full

mobility.  (R. 247.)  She had full range of motion of her shoulders, elbows, forearms, and wrists bilaterally.  (*Id*.)  Dr. Han noted tenderness in her neck and lower back.  (*Id*.)  He noted that x-rays of her cervical spine showed degenerative spondylosis at C5-C6, C6-C7 with moderate straightening.  (R. 248.)  He further noted that x-rays of her lumbosacral spine were negative.  (*Id*.)  He diagnosed her with obesity, hypertension, neck and low back pain, and depression.  (*Id*.)  He opined that Plaintiff had no physical restriction for general daily activities.  (*Id*.)

On July 29, 2008, Dr. Perdik evaluated Plaintiff.  (R. 387-88.)  Plaintiff complained of neck pain, but was in no acute distress.  (*Id*.)  She exhibited right-side paracervical muscle tenderness and spasm.  (R. 388.)  Dr. Perdik noted that Plaintiff's hypertension and depression were well controlled.  (*Id*.)  He diagnosed her with cervical disc degeneration and neck pain, and prescribed Naprosyn, Flexaril, and heat.  (*Id*.)  On August 28, 2008, Plaintiff visited Dr. Guinto for a vascular follow-up examination for her chronic venous insufficiency in her left leg, and recurring edema.  (R. 277.)  Dr. Guinto recommended that she return for a follow-up appointment in six months and advised her to cease smoking cigarettes and to reduce her weight. (*Id*.)  On September 22, 2008, Plaintiff visited Dr. Perdik complaining of neck and right shoulder pain.  (R. 384-85.)  She was in no acute distress and exhibited normal range of motion.  (R. 385.) He noted that her depression was well controlled with Lexapro.  (*Id*.)  He diagnosed her with cervical disc degeneration and recommended that she continue to take Tylenol as needed.  (*Id*.)

### 3.     Medical Evidence after Plaintiff's Date Last Insured (September 30, 2008)

Plaintiff continued to treat periodically with Dr. Perdik after her date last insured, September 30, 2008.  On November 24, 2008, Plaintiff visited Dr. Perdik, complaining of continued neck and lower back pain, as well as numbness in her feet.  (R. 382-83.)  Plaintiff was in no acute distress and her hypertension and depression were well controlled.  (R. 383.)  Dr.

Perdik recommended that Plaintiff continue to take Tylenol as needed for her cervical disk degeneration. (*Id*.)

On April 2, 2009, Plaintiff reported to Dr. Perdik that she was feeling well, with no new complaints. (R. 380.) On examination, he did not find any abnormalities of her systems and she did not exhibit any signs of acute distress. (*Id*.) He noted that her hypertension was stable and well controlled and that her general outlook had improved with taking Lexapro. (R. 380-81.) Dr. Perdik's record makes no mention of cervical disc disease or neck pain. (*Id*.) On July 2, 2009, Plaintiff reported to Dr. Perdik that, again, she was feeling well and had no new complaints. (R. 378.) Dr. Perdik found that Plaintiff's hypertension and depression were well controlled and recommended continued use of her medications. (R. 379.)

On October 2, 2009, Plaintiff visited Dr. Perdik complaining of chronic left leg, right foot, neck, back, and shoulder pain. (R. 376.) She was in no acute distress and an examination of her musculoskeletal systems was normal. (R. 376-77.) Dr. Perdik recommended that she see a podiatrist. (R. 377.) At the time of this visit, Dr. Perdik completed a Spinal Impairment Questionnaire. (R. 369-75.) He diagnosed her with cervical disc disease, C4-C5 disc herniation, and spinal stenosis C4-C5, C6-C7. (R. 369.) He reported that she suffered from limited range of motion of her spine, as well as numbness and pain in her neck, lower back, arms, and feet. (R. 371.) Dr. Perdik reported that medication did not completely resolve her pain. (R. 372.) He opined that in an eight-hour work day, Plaintiff could sit for one hour and stand/walk for less than one hour. (*Id*.) She would need to get up and move hourly, taking ten to fifteen minute breaks, and could not sit or stand continuously in a work setting. (R. 372, 374.) He opined that she could occasionally lift and carry less than five pounds. (R. 372-73.) He indicated that her symptoms were severe enough to interfere with attention and concentration. (R. 373.) However,

emotional factors did not contribute to the severity of her symptoms or functional limitations, and Plaintiff was able to handle low stress. (R. 373-74.) He also opined that Plaintiff could not push, pull, kneel, or stoop, and should avoid heights. (R. 375.)

### 4. Medical Evidence Submitted to the Appeals Council

#### a. Evidence Submitted Prior to the ALJ's Decision

After the hearing, but before the ALJ issued his decision, Plaintiff submitted additional medical records for appointments that occurred before her date last insured. On September 27, 2007, Reena Loona, D.O., examined Plaintiff. (R. 461-62.) Plaintiff complained of upper back and right-side neck pain from her injury that resulted from a clothing rack falling on her at a department store. (R. 462.) Plaintiff experienced pain during the examination and her shoulders did not have the full range of motion. (*Id*.) Her thoracic spine exhibited spasm but showed no other abnormalities. (*Id*.) Dr. Loona diagnosed her with mid-back musculoskeletal pain and recommended that Plaintiff take Naprosyn for pain. (*Id*.)

On October 26, 2007, Plaintiff visited Dr. Perdik, complaining of continued sharp, non-radiating right-side neck pain, which worsened with rotation. (R. 463-64.) Dr. Perdik diagnosed her with neck pain. (R. 464.) He recommended that Plaintiff continue her current medications, obtain an MRI of her cervical spine, and begin a course of physical therapy. (*Id*.) On December 5, 2009, Plaintiff was evaluated for physical therapy. (R. 520-21.)

#### b. Evidence Submitted after the ALJ's Decision

After the ALJ issued his decision, Plaintiff submitted medical records for appointments that occurred after her date last insured. On January 7, 2010, Dr. Perdik examined Plaintiff. (R. 562-63.) Plaintiff had no new complaints and was in no acute distress. (R. 562.) Dr. Perdik

assessed that her hypertension and depression were well controlled. (R. 563.) He diagnosed cervical disc degeneration and recommended continued pain management. (*Id*.)

On July 12, 2010, Donald I. Goldman, M.D. completed a Lumbar Spine Impairment Questionnaire based on his June 8, 2010 examination of Plaintiff. (R. 585-91.) On July 14, 2010, an MRI of Plaintiff's lumbar spine revealed minimal dessication of the L1/2 through L 4/5 discs; moderate dessication and narrowing of the L5/S1 disc; Modic Type I changes at the L5/S1 level, with ventral marginal osteophyte and diffuse disc bulging; and minimal bilateral facet hypertrophy at the L4/5 and L5/S1 levels. (R. 594.) There were no other significant abnormalities and the impression was degenerative disc disease. (*Id*.) On August 1, 2010, Dr. Goldman wrote a letter to Plaintiff's counsel, regarding his consultative orthopedic surgical examination of Plaintiff conducted on June 8, 2010. (R. 597-602.)

## DISCUSSION

### A. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982) (internal citations omitted). The latter determination

requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999) (quotations omitted).

**B.      Disability Claims**

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also*

*Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. §§ 404.1520 and 416.920. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education and work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(e). In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002) (citing *Carroll,* 705 F. 2d at 642).

## C.    The ALJ's Decision

On December 17, 2009, the ALJ issued a decision denying Plaintiff's claims. (R. 9-32.) The ALJ followed the five-step procedure in making his determination that Plaintiff could

perform past relevant work as a bookkeeper, and therefore, was not disabled.  (R. 27.)  At the first step, the ALJ determined that Plaintiff had not worked since February 28, 2008, the alleged onset date.  (R. 14.)  At the second step, the ALJ found the following severe impairments:  back impairment, varicose veins, and tendonitis.  (R. 14-15.)  The ALJ noted that, according to Plaintiff's physician, Dr. Perdik, Plaintiff's high blood pressure, hyperlipidemia, GERD, and depression were well controlled with medication.  (R. 15.)  The ALJ found that Plaintiff's depression was not severe.  (R. 15-16.)  The ALJ did not comment on Plaintiff's neck injury (cervicalgia) or her obesity.  At the third step, the ALJ concluded that Plaintiff's impairments, in combination or individually, did not meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 16.)

At the fourth step, the ALJ found that Plaintiff had the RFC to perform a full range of medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c).  (R. 16-27.)  The ALJ concluded that Plaintiff could "[lift] twenty-five pounds frequently and fifty pounds occasionally; sit, stand, and walk for six hours in an eight hour workday; and has an unlimited ability to push/pull.  No nonexertional limitations significantly erode the claimant's residual functional capacity."  (R. 16.)  The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effect of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment.  (R. 22-25.)  The ALJ concluded at step four that Plaintiff was capable of performing her past relevant work as a bookkeeper, which is considered sedentary work, both as she actually performed it and as it is generally performed in the economy.  (R. 27.)

Alternatively, the ALJ found "other jobs existing in the national economy that [Plaintiff] is also able to perform."  (*Id*.)  The ALJ noted that, at the time of the hearing, Plaintiff was 54

years old and that she "subsequently changed age category to advanced age." (*Id.*) He stated that she had "at least a high school education and is able to communicate in English." (*Id.*) He concluded that Plaintiff's RFC for medium work permitted her to perform other work readily available in the national economy, and thus, in the alternative, mandated a "finding of 'not disabled' [as] directed by Medical-Vocational Rule 203.22 and Rule 203.15." (R. 28.)

## D. Application

The Commissioner moves for judgment on the pleadings, seeking affirmation of the denial of Plaintiff's benefits on the grounds that the ALJ applied the correct legal standards to determine that Plaintiff was not disabled and the factual findings are supported by substantial evidence. (Def. Mem. at 1; Reply Mem. of Law in Further Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Reply Mem.") at 1, Dkt. Entry No. 16.) Plaintiff cross-moves for judgment on the pleadings, contending the ALJ failed to properly: (1) evaluate the medical evidence with respect to the (a) designation of Plaintiff's neck as a severe impairment, (b) consideration of the criteria for listing 104.A, and (c) application of the treating physician rule with respect to Dr. Perdik's reports; as well as (2) consider the effects of Plaintiff's obesity; (3) analyze Plaintiff's RFC under Medical-Vocation Rule 201.06; and (4) evaluate Plaintiff's credibility. (*See generally* Pl. Mem.)

The ALJ's conclusion applied the appropriate legal standards and is supported by the substantial evidence. Plaintiff's arguments to the contrary are unfounded.

### 1. Plaintiff's Neck Impairment

Plaintiff contends that remand is appropriate as the ALJ failed to evaluate her neck impairment (cervicalgia) at step two. (Pl. Mem. at 12-14.) A review of the ALJ's analysis at step two, as the Commissioner concedes, is void of any discussion of Plaintiff's neck

impairment. (R. 14-16.) However, this oversight does not merit remand. The ALJ discussed Plaintiff's neck impairment at length in evaluating her RFC. (R. 16-27.) The ALJ's detailed analysis of the RFC indicates that the ALJ was aware of Plaintiff's neck impairment and considered the effect that her neck impairment had on her physical abilities. As set forth below, the ALJ's RFC analysis applied the proper legal standards and is substantially supported by the evidence. (*See infra*. DISCUSSION D.4.) Thus, even if the Court remands this action to the ALJ with instructions to designate Plaintiff's neck condition as a severe impairment, the outcome of Plaintiff's claim would not change. The Second Circuit has explained that "[w]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration." *Zabala v. Astrue*, 595 F. 3d 402, 409 (2d Cir. 2010) (declining to remand even though the ALJ failed to satisfy the treating physician rule as the medical record that the ALJ overlooked would not have altered the ALJ's disability determination) (quoting *Johnson v. Bowen*, 817 F. 2d 983, 986 (2d Cir. 1987)); *Reices-Colon v. Astrue*, 2013 WL 1831669, at *1 (2d Cir. May 2, 2013) (summary order) (finding harmless error, in dicta, when the ALJ failed to address two of plaintiff's numerous medical conditions at step two as the ALJ specifically considered those conditions during the subsequent steps). Accordingly, remand on this ground is unnecessary.

Plaintiff also contends that the ALJ erred at step three by not finding that her conditions in combination or separately (including her neck impairment) satisfied the criteria of listing 104.A. (Pl. Mem. at 14-15.) At step three, the ALJ explained that he gave "specific consideration to section 1.00 of the listed impairments. However, the claimant's condition does not meet or medically equal the criteria of these, or indeed, any of the impairments listed in Appendix I." (R. 16.)

Section 104.A sets forth the conditions required to establish disorders of the spine. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 104.A. Specifically, an individual must have a disorder:

> (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including the cauda equine) or the Spinal cord. *With*:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 104 (emphasis added).

The medical records indicate that Plaintiff suffered from mild to moderate disc degeneration (R. 205), bulging discs, (R. 360, 371), mild spinal stenosis (R. 360, 371), and herniated discs (R. 205, 360, 371) during the relevant period. However, the record lacks medical evidence establishing several of the requisite complications such as motor loss (atrophy with associated muscle weakness), and sensory or reflex loss. Indeed, Plaintiff's physicians specifically found no muscle weakness or atrophy (R. 364, 378, 380, 392), or submitted records with no findings whatsoever as to atrophy or weakness (R. 370), and also found motor and sensory nerve conduction studies within normal limits (R. 210) during the relevant period. Likewise, Dr. Han, who conducted a consultative examination of Plaintiff, noted negative straight leg raises, and no motor or sensory deficits. (R. 247-48.) Thus, the ALJ's findings at step three are supported by the substantial evidence.

### 2. Application of Treating Physician Rule to Dr. Perdik's Opinion

With respect to "the nature and severity of [a claimant's] impairment(s)," 20 C.F.R. § 404.1527(d)(2), "[t]he SSA recognizes a 'treating physician' rule of deference to the views of the

physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F. 3d 99, 106 (2d Cir. 2003). A claimant's treating physician is one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Schisler v. Bowen*, 851 F. 2d 43, 46 (2d Cir. 1988). A treating physician's medical opinion regarding the nature and severity of a claimant's impairment is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record." *Burgess v. Astrue*, 537 F. 3d 117, 128 (2d Cir. 2008) (quotation marks and alteration omitted). The Second Circuit has noted that "[w]hile the opinions of a treating physician deserve special respect . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Lazore v. Astrue*, 443 F. App'x 650, 652 (2d Cir. 2011) (quoting *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002)). Where a treating source's opinion is not given controlling weight, the proper weight accorded by the ALJ depends upon several factors, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Soc. Sec.*, 143 F. 3d 115, 118 (2d Cir. 1998); *see also* 20 C.F.R. § 404.1527(c)(2).

Plaintiff asserts that the ALJ erred in giving less than controlling weight to Dr. Perdik's opinion because his opinion is supported by objective clinical tests, is consistent with the opinions of the other treating and examining doctors, and is reflective of the long-term nature of his treatment of Plaintiff. (Pl. Mem. at 16-18.) Additionally, Plaintiff asserts that the ALJ erred in giving controlling weight to P. Mulvihill, a non-physician, as well as "cherry-pick[ing]"

through the evidence to give controlling weight to only those opinions that supported his conclusions. (R. 18-19.)

The ALJ gave "little weight" Dr. Perdik's April 2008 and October 2009 opinions regarding Plaintiff's RFC. (R. 25-26.) Dr. Perdik explained that he assigned little weight to those opinions because they were not supported by clinical findings and were inconsistent with the evidence as a whole. (R. 25.) The ALJ cited specific examples in support of his decision. (R. 25-26.) The ALJ further noted that "[i]t appears that Dr. Perdik's opinions regarding severe restrictions have been based mainly on the claimant's subjective complaints . . . ." (R. 26.)

The ALJ did not err in assigning little weight to Dr. Perdik's April 2008 RFC assessment. In that assessment, Dr. Perdik found that Plaintiff could not sit for more than two hours and could not stand or walk for more than one hour, and could not change between sitting and standing positions in a work setting. (R. 176-77.) He further found that Plaintiff could lift ten pounds occasionally and five frequently. (R. 177.) Objective medical evidence indicates otherwise. In March 2008, Dr. Reejsinghani, a neurologist, found no abnormalities. (R. 365.) The results of an EMG taken in April 2008 were negative. (R. 209-10.) Furthermore, these severe restrictions are inconsistent with other contemporaneous records from Dr. Perdik. For example, on April 21, 2008, Dr. Perdik examined Plaintiff and noted that her muscle tone and strength were normal, and that her gait was coordinated and smooth. (R. 391-92.) He described Plaintiff as experiencing "intermittent symptoms" with respect to her cervical disc degeneration. (R. 392.) Finally, as set forth in greater detail below, these severe restrictions are inconsistent with Plaintiff's statements as to her physical activities. Indeed, on June 18, 2008, Plaintiff told Dr. Han that she was able to cook seven days a week, clean twice a week, do laundry twice a week, shower and dress herself daily, and grocery shop once a week. (R. 246.)

The ALJ did not err in assigning little weight to Dr. Perdik's October 2009 RFC assessment. In that assessment, Dr. Perdik found that Plaintiff could not sit or stand for more than an hour in an eight-hour work day and that she would need to take fifteen minute breaks every hour. (R. 372-74.) He indicated that she could occasionally lift five pounds. (R. 372-73.) He also opined that Plaintiff could not push, pull, kneel, or stoop. (R. 375.) These restrictions are more severe than the April 2008 restrictions. Yet, these restrictions are inconsistent with other evidence in the record. Prior to the October 2009 assessment, Plaintiff repeatedly told Dr. Perdik that she had no new complaints and was feeling well. (R. 378, 380, 562.) She took only Tylenol for pain management. (R. 383.) In December 2009, she was evaluated for physical therapy, but did not begin a course of therapy (R. 520-21), and has not needed surgical intervention (R. 273). Furthermore, these restrictions are inconsistent with Plaintiff's statements regarding her daily activities.

The ALJ also properly assessed the opinions of other physicians. The ALJ gave "considerable weight" to Dr. Han's assessment of Plaintiff's condition because he "is an examining source with an appropriate area of expertise, and because his opinion that the claimant had no physical restrictions for general daily activities is consistent with the evidence as a whole." (R. 25.) The ALJ explained that "[m]ore weight has not been accorded to Dr. Han's opinions because he did not provide ranges regarding the claimant's abilities to sit, stand, walk, life, or carry in an 8-hour day." (*Id*.) The ALJ did not err in assigning considerable weight to this opinion of an examining physician as the opinion is consistent with Plaintiff's statements regarding her physical capabilities. *Cf. Diaz v. Shalala*, 59 F. 3d 307, 313 n.5 (2d Cir. 1995) (explaining that the regulations allow, among other things, "the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the

record"); *Oliphant v. Astrue*, 2012 WL 3541820, at *15 (E.D.N.Y. Aug. 14, 2012) ("[U]nder the Regulations, opinions of non-treating and non-examining doctors can override those of treating doctors as long as they are supported by evidence in the record.") (citing *Schisler v. Sullivan*, 3 F. 3d 563, 568 (2d Cir. 1993)).

The ALJ properly explained his reason for assigning "[c]onsiderable weight" to the opinions of Dr. Eisenberg, a neurosurgeon. (R. 25.) Dr. Eisenberg reviewed Plaintiff's MRI and determined that surgical intervention was unnecessary. (R. 204-05.) The objective medical evidence, *i.e.*, the MRI, supports this finding and the finding was consistent with the evidence as a whole.

Finally, contrary to Plaintiff's assertion, the ALJ did not assign "controlling weight" to the opinion of P. Mulvihill, a non-physician who reviewed Plaintiff's medical records on behalf of the Disability Determination Services. Rather, the ALJ "accorded little weight" to P. Mulvihill's findings, recognizing that P. Mulvihill, a state agency analyst, "is not a medical doctor." (R. 27.) Under these circumstances, the mentioning of a non-physician or analyst's opinion does not merit remand. *See Martin v. Astrue*, 2012 WL 4107818, at *15-16 (N.D.N.Y. Sept. 19, 2012) (explaining that the "mere mention in the ALJ's decision that the analyst's report was 'not entitled to much weight' is not a basis for remand, especially in light of the wealth of other information that the ALJ considered"). Accordingly, the ALJ has justified his application of the treating physician rule and remand is unnecessary.

### 3. Plaintiff's Obesity

Plaintiff argues that the ALJ erred in failing to consider her obesity. (Pl. Mem. at 19-20.) The ALJ considered all of the medical records Plaintiff submitted. Many of these records mention Plaintiff's obesity, in passing, but do not suggest that her obesity contributes to the

severity of her conditions or to her overall functional capacity. (R. 323-24, 376-83, 387-90, 393-94.) Plaintiff did not testify that her obesity affected her condition or functional capacity in any way. Indeed, the records suggest that Plaintiff's obesity did not affect her condition or functional capacity. For example, she was described as a "mildly obese female, ambulatory not in distress." (R. 206.) Under similar circumstances, the Second Circuit has declined to remand to the ALJ for additional proceedings. *See Britt v. Astrue*, 486 Fed. App'x 161, 163 (2d Cir. June 20, 2012) (summary order) (declining remand "because [the plaintiff] did not furnish the ALJ with any medical evidence showing how [obesity] limited his ability to work"). Accordingly, Plaintiff's request to remand this action to the ALJ for consideration of her obesity is denied.

### 4. Plaintiff's RFC

The ALJ found that Plaintiff was capable of "the full range of medium work." (R. 16.) In particular, the ALJ found that Plaintiff was able to lift "twenty-five pounds frequently and fifty pounds occasionally; sit, stand, and walk for six hours in an eight-hour workday; and has an unlimited ability to push/pull." (*Id*.) Further, "[n]o nonexertional limitations significantly erode the claimant's residual functional capacity." (*Id*.) First, the ALJ's function-by-function assessment was adequate as the ALJ made sufficient findings as to Plaintiff's capabilities. *See Oliphant*, 2012 WL 3541820, at *23 (concluding that the Commissioner sustained his burden at step five, as the ALJ, in determining that plaintiff could perform sedentary work, made findings as to plaintiff's ability to sit, stand, walk, lift, carry, push, and pull, in addition to findings regarding plaintiff's mental and physical ability to perform sedentary work); *see also Murphy v. Astrue*, 2013 WL 1452054, at *6 (W.D.N.Y. Apr. 9, 2013) (finding that "although the ALJ did not methodically walk through each 'function,' the ALJ adequately considered how the evidence supported her conclusion concerning Plaintiff's physical limitations and her ability to perform

sedentary work" as the ALJ detailed medical evidence from treating sources, opinions from state-medical examiners, as well as Plaintiff's ability to live independently).

Second, as set forth above, the ALJ properly applied the treating physician rule, and was entitled to rely on the report of Dr. Han in assessing Plaintiff's RFC. Dr. Han found that "Plaintiff had no physical restriction for general daily activities." (R. 248.) This finding was consistent with Plaintiff's statements as to her daily activities as well as other objective medical evidence in the record. (R. 147-52, 155, 160-62, 242-43, 246-48.)

### 5.    Plaintiff's Credibility

The Second Circuit recognizes that subjective allegations of pain may serve as a basis for establishing disability. *See Taylor v. Barnhart*, 83 F. App'x 347, 350 (2d Cir. Nov. 21, 2003) (summary order) (citing *Marcus v. Califano*, 615 F. 2d 23, 27 (2d Cir. 1979)). However, the ALJ is afforded discretion to assess the credibility of a claimant and is not "required to credit [Plaintiff's] testimony about the severity of her pain and the functional limitations it caused." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. May 28, 2008) (summary order)). In determining Plaintiff's credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations. *See Peck v. Astrue*, 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010). First, the ALJ must consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b); S.S.R. 96-7p. Second, if the ALJ finds that the individual suffers from a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's ability to work. 20 C.F.R. § 404.1529(c). When the ALJ finds that

the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

"If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, [she] must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Correale-Englehart*, 687 F. Supp. 2d at 435. When the ALJ neglects to discuss at length her credibility determination with sufficient detail to permit the reviewing court to determine whether there are legitimate reasons for the ALJ's disbelief and whether her decision is supported by substantial evidence, remand is appropriate. *Id.* at 435-36; *see also Grosse v. Comm'r of Soc. Sec.*, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding the ALJ committed legal error by failing to apply factors two through seven); *Valet v. Astrue*, 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (remanding because the ALJ failed to address all seven factors).

Turning to the instant action, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional

capacity assessment." (R. 22.) The ALJ explained in depth that the objective medical evidence did not support Plaintiff's subjective complaints and physical limitations. (R. 22-23.) For example, Plaintiff testified that she experienced constant pain at a level of 9.5 out of ten. (R. 38.) However, nearly every medical record indicates that Plaintiff was in "no acute distress" (R. 323, 376, 378, 380, 383, 385, 388, 390-91, 393, 456, 459, 462, 477, 484, 496, 499, 501, 508, 517, 541, 555, 557, 562), and on occasion, indicated that she was "feeling better" and had "no complaints" (R. 378, 380, 562, 541, 555). Moreover, she was observed ambulating normally without distress and without assistance, and was able to get on and off of examining tables without assistance. (R. 152, 246, 315.) There are a few examples of her expressing discomfort during particular portions of examinations, but such complaints were rare. (R. 247, 388.)

The ALJ noted that Plaintiff's treatment was conservative. (R. 24.) Plaintiff took no medication other than over-the-counter Tylenol for pain management and, at times, reported to her physicians that she took no medication. (*Id*.) Plaintiff's physicians recommended against spinal surgery. (R. 23.) Her physicians recommended physical therapy, which she initially declined to pursue. (R. 273.) Finally, in support of the ALJ's credibility determination, the ALJ detailed Plaintiff's statements concerning her daily activities. (R. 24-25.) Plaintiff indicated that she was able to attend to personal needs on her own, travels on public transportation alone, socializes, gardens, and plays games with her children. (R. 24.) She handled the household chores, primarily on her own, even though she lived with two adult children. (*Id*.) The substantial evidence in the record supports the ALJ's credibility determination.

### 6. Other Work

The ALJ concluded that Plaintiff could engage in her past relevant work as a bookkeeper. (R. 27.) Alternatively, the ALJ concluded that the Plaintiff could engage in other work readily

available in the national economy. (*Id.*) Plaintiff, who now is of advanced age, argues that this action must be remanded because under Medical-Vocation Rules 201.06 or 202.06, the ALJ must find her disabled. (Pl. Mem. 22-23.) As set forth above, the ALJ properly concluded that Plaintiff is able to perform her past relevant work as a bookkeeper. The Court declines to address the ALJ's alternative findings as to Plaintiff's ability to find other work. Accordingly, the ALJ's disability determination is affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted; Plaintiff's cross-motion for judgment on the pleadings is denied and this action is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
   September 30, 2013

_____/s/_____
DORA L. IRIZARRY
United States District Judge
